UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   Plaintiff, | : CASE NO: 2:17-CR-97-001<br>: (Judge Algernon L. Marbley)<br>: |
| vs. | :<br>: |
| RASIM UKOJA, aka "Ray",<br>   Defendant. | : |

**<u>SENTENCING MEMORANDUM
ON BEHALF OF
RASIM UKOJA</u>**

This sentencing memorandum is offered to supplement the Presentence report provided to the Court by Mr. Daniel E. Fugate of the Federal Probation and Parole Office in Columbus, Ohio. Counsel for Mr. Ukoja is in a unique position to provide additional information that will as 18 U.S.C.§3553(a) demands, allow this Court to "impose a sentence sufficient but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection."

First, counsel will address the various sentencing factors post-Booker and how they impact the sentencing. Secondly, counsel will address the § 3553 factors and how they apply in this matter. Next, counsel will provide the Court with further background information on Mr. Ukoja and his familial responsibilities. Finally, counsel will recommend a sentence complying with the factors detailed in 18 U.S.C.§3553.

1

## INTRODUCTION

## THE STATUTORY STRUCTURE PERMITS THIS COURT TO IMPOSE A SENTENCE FREE FROM THE RESTRAINTS OF THE FEDERAL SENTENCING GUIDELINES.

Counsel is aware this Court is knowledgeable in the recent developments in sentencing jurisprudence but for the record will provide a recognized framework for the Court to consider following.  In *Gall v. United States*, 128 S. Ct. 586,598 (2007), quoting *Koon v. United States*, 518 U.S. 81, 113 (1996) the Supreme Court held,

> "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

The Supreme Court held, a sentencing court "may not presume that the Guideline range is reasonable," *Gall*, 128 S. Ct. at 596-67, and cannot "require 'extraordinary circumstances' to justify a sentence outside the Guideline range." *United State v. Bolds*, 511 F.3d 568, 580-81 (6th Cir. 2007).  The district judge 'must [instead] make an individualized assessment based on the facts presented' and upon a thorough consideration of all the §3553 (a) factors." *Id.* at 580 quoting *Gall,* 128 S. Ct. at 597). Although the Sentencing Commission "fills an important institutional role" in promulgating the Guidelines, the sentencing judge "has greater familiarity with the individual case and the individual defendant before him…[and] is therefore in a superior position to find facts and judge their import under §3553 (a) in each particular case." *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007), internal quotation and citations omitted).

2

The Sentencing Reform Act, 18 U.S.C. §3551 et. seq. imposes an "overarching instruction" district courts must select a sentence "sufficient but not greater than necessary" to achieve the sentencing goals in §3553(a)(2). *Kimbrough v. United States,* 128 S. Ct. 558, 570 (2007). Those goals include the need for the sentence to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (B) afford adequate deterrence to criminal conduct, (C) protect the public from further crimes of the defendant, and (D) provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Gall*, at 597, n. 6. To arrive at a sentence that serves those goals without being greater than necessary, the Act directs the judge to consider the many factors listed in §3553(a)(1)-(7). These considerations are more than a laundry list of discrete sentencing factors. They comprise "a tapestry of factors, through which runs an overarching principle," the court's duty to "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *United States v. Rodriquez*, 527 F.3d 221, 228 (1st Cir. 2008).

Section 3553(a)(1) begins with the 'broad command' to consider the nature and circumstances of the offense and the history and characteristics of the defendant. The statute also requires judges to consider the types of sentences available by statute, §3553(a)(3), including "sentences other than imprisonment," such as probation. *See Gall, id,* and at 595-596 and n.4, 602 (probationary sentence reflected consideration of types of sentence available, and discussing probation as substantial restriction on freedom based on conditions of supervision). Although §§ 3553(a)(4) & (5) require the district court to consider the advisory Sentencing Guidelines range and relevant policy

3

statements by the Sentencing Commission, the Guidelines can provide only a "rough approximation" of what might be an appropriate sentence. *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007). §3553(a)(6) requires the district court to consider the need to avoid unwarranted disparities in choosing a sentence. This encompasses a corresponding duty to avoid "unwarranted similarities" among defendants who are not similarly situated. *See Gall*, at 600 (sentence of probation reflected defendant's voluntary withdrawal from conspiracy, whereas conspirators who did not withdraw received prison terms). Finally, §3553(a)(7) requires the court to consider the need for restitution, if applicable.

The Supreme Court envisions a district court will normally begin its analysis by accurately calculating the Guideline range, but then may consider arguments that the Guideline sentence should not apply because the guideline itself fails properly to reflect §3553(a) considerations, reflects an unsound judgment, does not treat a defendant's characteristics in the proper way, or that a different sentence is appropriates regardless. *Rita,* at 2468. The Supreme Court places nothing off limits for district courts.

**At his age, Mr. Ukoja is an exceptionally low risk to reoffend.**

The age of an offender is a powerful predictor of the likelihood of recidivism. Indeed, the Sentencing Commission has recognized that (1) recidivism rates decline dramatically with age, (2) first-time offenders are even less likely to reoffend than defendants with a limited criminal history who also fall within Criminal History Category I. See U.S. *Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at Ex. 9 (May 2004) [hereinafter

4

*Measuring Recidivism Report*]; U.S. Sentencing Commission, Recidivism and the "First Offender," at 13-14 (May 2004) [hereinafter First Offender Report].

In March of 2016 the United States Sentencing Commission completed a study of "Recidivism Among Federal Offenders: A Comprehensive Overview."  They determined that a federal offender's age at time of release into the community was also closely associated with differences in recidivism rates.  Offenders released prior to age 21 had the highest re-arrest rate, 67.6 percent, while offenders over sixty years of age reoffended at a rate of 16%.  Of more interest is the finding that those convicted of larceny types of offenses reoffended only 3.9% of the time.

Mr. Ukoja is presently (51) years old.  He is certainly closer in age to the young offenders who seem to continue with their life of crime.  Now in his fifties, it would seem logical that the risk of him reoffending is diminishing.

**Mr. Ukoja's Involvement in this matter was minimal and he is entitled to a two-level decrease in his guideline calculation.**

Counsel objected to the failure of the probation officer to assess a two-level reduction for Mr. Ukoja's involvement in this matter.  It is counsel's belief that Mr. Ukoja was a minor participant in the criminal enterprise.  These decisions are typically fact intensive.  Mr. Ukoja's role was limited to driving the parties from Chicago to Columbus and back.  He took no part in the planning or execution of the robbery.  Paragraphs 18, 19 and 20 of the PSR reflect that the principal offenders in this matter were Victor T. Aloush, the chief planner, hatched this plan with the aid of Meir Hillel.  As paragraph 19 states, "Mr. Aloush subsequently devised the plan to commit the robbery."  Mr. Ukoja was a late participant principally because Aloush knew Ukoja to be

5

out of work and in need of money.  Mr. Ukoja never left the vehicle and was not aware that the perpetrators were prepared to use force in order to accomplish their goals.  Mr. Ukoja's involvement was gratuitous.  He provided nothing of value to the enterprise since there were others in the van that could have driven.  Application Note 5 provides that §3B1.2 (b's) 2-level reduction for minor participants applies to defendants who are "less culpable than most other participants, but who role could not be described as minimal." As I said in the objection, there is a clear delineation between the efforts of everyone involved in the robbery.  Those who planned and orchestrated the robbery are clearly at the top of the pyramid.  Those willing to go inside and physically do whatever was necessary to complete the crime are just below those who planned and organized it.  And the man in the car, who simply drove is at the bottom of the pyramid.

**The victim did not receive medical treatment for his injuries; therefore the two-level enhancement under Specific Offense Characteristics is not appropriate.**

Counsel concedes that being the victim of a robbery such as this may result in psychological problems.  In the plea agreement Mr. Ukoja agreed there was physical injury to the victim but was unaware he never sought any medical assistance for his injuries.  (See Paragraph 42: Specific Offense Characteristics)(Also see Paragraph 29. In which the report states Mr. Bednarczyk received no medical treatment for these injuries).  For this reason, Mr. Ukoja should not receive the enhancement.

6

**<u>Most of Mr. Ukoja's serious criminal involvement has taken place in the last three years.</u>**

A review of Mr. Ukoja's criminal history reflects a number of minor infractions in his younger years.  Most of his life he has worked as a laborer with little financial return. His acquaintance with Victor Aloush led to his involvement in this and another burglary. Aloush knew he was vulnerable because of his financial situation and dangled the fruit in front of him.  Unfortunately, he did not decline, as he should.

**<u>There are serious collateral consequences should Mr. Ukoja be incarcerated.</u>**

While the circuit courts still struggle with the concept of collateral consequences in imposing sentences, they are now split on the impact they have on defendants when applied to § 3553(a).  The Fourth Circuit has determined that the loss of a defendant's "teaching certificate and his state pension as a result of his conduct," were appropriate sentencing considerations, "consistent with § 3553 (a)'s directive that the sentence reflect the need for 'just punishment and 'adequate deterrence.'"  *United States v. Pauley,* 511 F. 3d 468, 474-75 (4th Cir. 2007).  In *United States v. Stewart,* 590 F.3d 93 (2nd Cir. 2009), the district court sentenced the defendant to a sentence below a guidelines sentence because the "conviction made it doubtful that the defendant could pursue his career as an academic translator, and therefore that the need for further deterrence and protection of the public is lessened because the conviction itself already visits substantial punishment on the defendant." *Id.* At. 141.  The circuit court affirmed, reasoning that the district court's analysis was "required by section 3553(a)," and commented: "it is difficult to see how a court can properly calibrate a 'just punishment' if it does not consider the collateral effects of a particular sentence." *Id.* at. 141-142.

The Second Circuit has gone so far as to recognize deportation as a collateral consequence that a court may consider under § 3553(a). *United States v. Thavaraja,* 740 F. 3d 253 (2nd Cir. 2014). Despite the government's arguments in the appellate court, the Second Circuit opined, "In determining what sentence is sufficient, but not greater than necessary, to serve the needs of justice, a district court may take into account the uncertainties presented by the prospect of removal proceedings and the impact deportation will have on the defendant and his family." *Id.* at. 262-263.

Recently Mr. Ukoja's wife, Fikreta, passed away. She suffered a brain injury that left her living in a nursing home. Mr. Ukoja has seven children. All but one is grown. His 14-year old son will be without both parents should this court incarcerate Mr. Ukoja, from the letters that counsel has included it is clear that the family relies heavily on Mr. Ukoja for both financial and psychological support. This is particularly true since the death of his wife.

Earlier this summer, Mr. Ukoja applied for and obtained his commercial driver's license. This provides him with better financial opportunities than he has had in the past. He is employed at Legacy Express Trucking in Joliet, Illinois.

## Conclusion

The guideline calculation in this case should reflect a total offense level of 19 with a criminal history of I. The guideline for imprisonment should be 30 months to 37 months. When compared to the (44) month sentence imposed on Victor Aloush, the most culpable of all of the defendants charged, this appears to be a more appropriate guideline range. In addition, counsel has provided letters of support from friends and family of Mr. Ukoja. These letters reveal a more personal side of Mr. Ukoja, his status in the

family and how those view him closest to him.  Finally, counsel has provided photographs of Mr. Ukoja and his family.  When made available, counsel will provide additional verification of employment and a copy of his wife's death certificate.

                                      Respectfully submitted

                                      **/s/ HAL R. ARENSTEIN**
                                      HAL R. ARENSTEIN 0009999
                                      ARENSTIEN & GALLAGHER
                                      The Citadel
                                      114 E. Eighth Street
                                      Cincinnati, Ohio 45202
                                      513-651-5666
                                      Fax: 513-651-5688
                                      Email: halalawyer@aol.com

## CERTIFICATE OF SERVICE

      I do certify that the foregoing was filed with the Clerk of the Courts using the electronic filing system that will send notification to all parties involved this 2nd day of November 2017.

                                      **/s/ HAL R. ARENSTEIN**
                                      HAL R. ARENSTEIN 0009999

.